1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LARRY BARBER,                                      )
                                                   )          Case No. 2:13-cv-00538-GMN-CWH
                    Plaintiff,                     )
                                                   )          __ORDER AND REPORT__
vs.                                                )          __AND RECOMMENDATION__
                                                   )
STEVE WILLIAMS, *et al.*,                          )
                                                   )
                                                   )
                    Defendants.                    )
_____)

        This matter is before the Court on Plaintiff's Motion/Application to Proceed *In Forma Pauperis*
(#1), filed on March 29, 2013.  Plaintiff has requested authority pursuant to 28 U.S.C. § 1915(a) to
proceed *in forma pauperis* and submitted a complaint along with his Application.  This matter is also
before the Court on Plaintiff's Motion for Appointment of Counsel (#4), filed on June 13, 2013.

**I.      *In Forma Pauperis* Application**

        In Plaintiff's Application, he asserts that he is unemployed, does not receive benefits or
supplemental income, does not have any assets, and cannot pay the filing fee.  Application #1, 1-2.
Plaintiff is currently incarcerated, and states that his inmate account has a current account balance of
$1.31, an average monthly balance of $1.65, and an average monthly deposit of $3.50.  *Id.* at 5.  Based
on the financial information provided, the Court finds that Plaintiff is unable to pay an initial partial
filing fee.  Accordingly, Plaintiff's request to proceed *in forma pauperis* is granted pursuant to §
1915(a).  However, even if this action is dismissed, the full filing fee of $400.00 must still be paid
pursuant to 28 U.S.C. § 1915(b)(2), as amended by the Prison Litigation Reform Act of 1995.  Plaintiff
shall be required to make payments of 20% of the preceding month's deposits to the prisoner's account,
in months that the account exceeds $10.00, until the full filing fee has been paid for this action.  The
Court will now review Plaintiff's Complaint.

**II.     Screening the Complaint**

Upon granting a request to proceed in forma pauperis, a court must additionally screen a complaint.  Federal courts are given the authority dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotations and citation omitted).  When a court dismisses a complaint, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir.1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *North Star Intern. v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983).  In considering whether the plaintiff has stated a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are to be construed in the light most favorable to the plaintiff.  *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).  Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

### A.      Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states."  Plaintiff asserts damages of $25.5 million in his complaint.  However, Plaintiff and Defendants appear to be Nevada citizens so there is no diversity jurisdiction in this case.

### B.      Federal Question Jurisdiction

As a general matter, federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Pursuant to 28 U.S.C. § 1331, federal district courts have original jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States." "A case 'arises under' federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983)). The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* Here, Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 based on false arrest and imprisonment in violation of the Thirteenth and Fourteenth Amendments to the United States Constitution. However, because the Court finds that Plaintiff failed to properly bring a claim under Section 1983 (see discussion below), federal question jurisdiction does not exist at this time.

Plaintiff will be given leave to amend his complaint to correct the noted deficiencies. However, he should be aware that the Court cannot refer to a prior pleading in order to make an amended complaint complete. Local Rule 15-1 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in this case. Therefore, in an amended complaint, each claim and the involvement of the defendant must be sufficiently alleged.

### C.   42 U.S.C. § 1983 Claim

Upon review of the Complaint, it appears as though Plaintiff is alleging excessive use of force in violation of the Eighth and Fourteenth Amendments against the Las Vegas Metropolitan Police Department ("LVMPD"), Officer Steve Williams, Captain Kirk Primas, and Sheriff Gillespie. Application #1-1, 2. On January 1, 2012, Plaintiff asserts that he was attempting to flee when Officer Williams used excessive force in firing his gun six times to stop Plaintiff, which resulted in Plaintiff being struck four times and injured. In addition, Plaintiff asserts that Captain Primas failed to properly supervise the training of Officer Williams and Sheriff Gillespie negligently investigated the incident.

To state a claim under Section 1983, a plaintiff must allege that a right secured by the

Constitution has been violated and the deprivation was committed by a person acting under color of state law. *See, e.g., Gibson v. U.S.*, 781 F.2d 1334, 1338 (9th Cir.1986); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006). States and state officers sued in their official capacity are not "persons" for the purposes of a section 1983 action, and generally, they may not be sued under the statute. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). However, Section 1983 does allow suits against state officers in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Liability can attach to an officer in his individual capacity if the plaintiff is able to establish: (1) that the official caused the deprivation of the plaintiff's rights while acting personally under color of state law, and (2) that the official is not entitled to the protection of qualified immunity. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)

### 1.   Eighth Amendment

The Eighth Amendment prohibits the use of "excessive physical force against [a] prisoner [that] may constitute cruel and unusual punishment even though [the] inmate does not suffer serious injury." *Hudson v. McMillian*, 503 U.S. 1 (1992). Plaintiff claims that Officer Williams used excessive deadly force with sadistic and malicious intent in firing his gun six times while Plaintiff was fleeing. However, Plaintiff fails to state a claim for relief pursuant to the Eighth Amendment because at the time of the incident Plaintiff was not incarcerated. Accordingly, the Court will recommend dismissal of this claim with prejudice.

The Court notes that Plaintiff may be attempting to state an excessive force claim pursuant to the Fourth Amendment. The Fourth Amendment guarantees a citizen's right to be free from "unreasonable searches and seizures." *U.S. Const. Amend. IV.* Apprehension by the use of deadly force is without question a seizure within the meaning of the Fourth Amendment, *see Tennessee v. Garner*, 471 U.S. 1, 7 (1985), and is permitted only where "at a minimum, the suspect presents an immediate threat to the officer or others, or is fleeing and his escape will result in a serious threat of injury to persons." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997). Moreover, there must be objective factors to justify the officer's concern that the suspect poses a threat—a simple statement by the officer is insufficient. Therefore, in determining whether Plaintiff's Fourth Amendment rights were violated,

1   the Court must consider whether the Defendant officers had probable cause to believe that Plaintiff

2   posed a significant threat of death or serious physical injury to themselves or others, and used

3   reasonable force to alleviate that threat. *Tennessee*, 471 U.S. at 3; *Graham v. Connor*, 490 U.S. 386

4   (1989). Plaintiff has not stated sufficient facts for the Court to determine whether there was a Fourth

5   Amendment violation. Accordingly, the Court will give Plaintiff leave to amend to correct his

6   complaint if he believes he can satisfy the above-noted standard to state a claim for relief under the

7   Fourth Amendment.

8                          **2.     Fourteenth Amendment**

9           Where a claim of excessive force arises in the context of an investigatory stop, arrest, or other

10  "seizure" of a free citizen, the claim is "properly analyzed under the Fourth Amendment's 'objective

11  reasonableness' standard, rather than under a substantive due process standard." *Graham*, 490 U.S. at

12  388; *see also Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir. 1989) (stating that "excessive force claims

13  arising before or during arrest are to be analyzed exclusively under the fourth amendment's

14  reasonableness standard"). Once a "seizure" or "arrest" ends, however, and "pretrial detention" begins,

15  the Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of

16  excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n. 10; *see also Bell v. Wolfish*,

17  441 U.S. 520, 535-39 (1979).

18          In *Robins v. Harum*, the Ninth Circuit considered the duration of a "seizure" for Fourth

19  Amendment purposes. 773 F.2d 1004 (9th Cir.1985). In that case, two sheriff's deputies arrested Mr.

20  and Mrs. Robins and while en route to the county jail the deputies got into a fight with the Robinses.

21  *Id.* at 1006. As a result of the deputies' conduct, the Robinses sued alleging use of excessive force in

22  violation of the Fourth and Fourteenth Amendments. *Id.* The Ninth Circuit concluded that even though

23  the deputies already had arrested the Robinses and were en route to the police station when they

24  allegedly used excessive force, the Robinses remained "arrestees" because "once a seizure has occurred,

25  it continues throughout the time the arrestee is in the custody of the arresting officers." *Id.* at 1009-10.

26          Taking the allegations of Plaintiff as true, the excessive force was allegedly used

27  contemporaneously with seizing Plaintiff. As a result, the Fourth Amendment governs his seizure until

28  he no longer was in William's custody as he was not a pretrial detainee. Therefore, the Court will

1  recommend dismissal of this claim with prejudice.

2        **3.     Qualified Immunity for Individual Defendants**

3        Plaintiff does not state whether his claims against Officer Williams, Sheriff Gillespie, and

4  Captain Primas are in their official or individual capacity.  Nevertheless, the Court will address both

5  capacities as it relates to immunity now.  "There is no longer a need to bring official capacity actions

6  against local government officials [in their official capacities], for under *Monell* ... local government

7  units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473

8  U.S. 159, 167 n. 14 (1985).  Because an official capacity suit against a municipal officer is equivalent to

9  a suit against the government entity, the court may dismiss the officer as a redundant defendant where

10  both the officer and the entity are named.  *Center for Bio–Ethical Reform, Inc. v. Los Angeles Cnty.*

11  *Sheriff Dept.*, 533 F.2d 780, 799 (9th Cir.2008).  Accordingly, the Court will recommend that any claim

12  against Officer Williams, Sheriff Gillespie, and Captain Primas in their official capacity be dismissed.

13        With respect to the officers named in their individual capacity, when government officials abuse

14  their offices, actions for damages under Section 1983 may offer injured parties the only avenue for

15  vindicating violations of their constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

16  However, permitting damages suits against government employees "'can entail substantial social costs,

17  including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit

18  officials in the discharge of their duties.'" *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1125 n. 5 (9th

19  Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  Courts have responded to these

20  competing interests by providing qualified immunity to government officials who act reasonably in

21  performing discretionary functions. *Id.*  Qualified immunity entitles government officials to "an

22  immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526

23  (1985). Whether qualified immunity applies is a legal question to be decided early in litigation. *See*

24  *Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998).

25        In the past, Ninth Circuit courts focused their initial inquiry in qualified immunity cases on

26  whether a constitutional right was clearly established. *Jackson v. City of Bremerton*, 268 F.3d 646, 651

27  (9th Cir. 2001). However, in *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court clarified that in

28  evaluating whether qualified immunity applies, the threshold question is: "Taken in the light most

1    favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

2    constitutional right?" 121 S.Ct. at 2156.  If the district court finds that no constitutional right would be

3    violated were the allegations true, qualified immunity applies and there is no need to conduct further

4    inquiries. *Id.* Only if the court determines that a constitutional violation could be made out is it

5    necessary to proceed to the second inquiry: whether the constitutional right was clearly established. *Id.*

6    The Supreme Court's requirement that courts focus first on constitutional violations is "intended to

7    assist courts in disposing of insubstantial suits at an early stage of litigation." *Jackson*, 268 F.3d at 651.

8         Here, a reasonable officer would be aware that the use of extreme and deadly force is only

9    reasonable and permissible when the officer perceives a threat of danger to himself or others.  As a

10   result, a Fourth Amendment claim against Officer Williams in his individual capacity may be subject to

11   qualified immunity.  Nevertheless, as Plaintiff has failed to establish a constitutional right was violated,

12   the Court will defer ruling on the immunity issue at this time.

13        As for Sheriff Gillespie and Captain Primas named in their individual capacity, under Section

14   1983, supervisory officials are not vicariously liable for actions of their subordinates.  *Pembaur v. City*

15   *of Cincinnati*, 475 U.S. 469, 479 (1986).  Rather, a supervisor may be held liable if there exists either

16   (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between

17   the supervisor's wrongful conduct and the constitutional violation.  *Hansen v. Black*, 885 F.2d 642, 646

18   (9th Cir.1989). Supervisory liability may be based on policy implementation rather than personal

19   participation where the policy is "so deficient that the policy itself is a repudiation of constitutional

20   rights and is the moving force of the constitutional violation." *Id.*  Here, Plaintiff does not allege that

21   Sheriff Gillespie and Captain Primas had any personal involvement in the alleged excessive force or

22   implemented a policy that caused the alleged excessive force.  For example, Plaintiff fails to

23   demonstrate that Sheriff Gillespie and Captain Primas were the "moving force" by setting the incident

24   in motion, knowing or should reasonably have known that it would result in a constitutional injury, or

25   refusing to terminate a series of acts they knew or should have reasonably known would cause Officer

26   Williams to commit the injury.  *Paiva v. City of Reno*, 939 F. Supp. 1474 (D. Nev. 1996).  Accordingly,

27   the Court will defer ruling on the immunity issue at this time.

28              **4.      Municipal Liability**

7

1    In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a

2   municipality could be held liable under Section 1983 if an official policy or custom directly caused the

3   violation of an individual's constitutional rights.  However, a municipality cannot be held liable simply

4   because it employs an officer who commits a constitutional tort.  *Hervey v. Estes*, 65 F.3d 784, 791 (9th

5   Cir.1995) (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018).  Such discretionary actions of municipal

6   employees, even when unconstitutional, generally are not chargeable to the municipality under Section

7   1983.  *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

8    To impose 1983 liability on a local governmental entity, such as Metro in this case, a plaintiff

9   must establish "(1) that he possessed a constitutional right of which he was deprived; (2) that the

10  municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's

11  constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"

12  *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378,

13  389–91 (1989)).  A plaintiff cannot prove the existence of a municipal policy or custom based only on

14  the occurrence of a single constitutional violation by a law enforcement officer.  *Davis v. City of

15  Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).  However, a policy "may be inferred from widespread

16  practices or 'evidence of repeated constitutional violations for which the errant municipal officers were

17  not discharged or reprimanded.'"  *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir.

18  2001) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)).

19   A plaintiff need not show that a municipality affirmatively encouraged officers to take the lives

20  of citizens; rather a municipality may be liable under Section 1983 for constitutional injuries inflicted

21  by its officers if it fails to adequately guard against such injuries through training and supervision.  *See

22  City of Canton*, 489 U.S. at 388.  The need for more or different training may be so obvious, and the

23  inadequacy so likely to result in violations of constitutional rights, that the municipality may be said to

24  have displayed "deliberate indifference."  *Id.* at 390.  A municipality will be held to a "constructive

25  notice" standard for failing to take corrective measures where information about officer misconduct

26  plainly indicates a need for such measures.  *See Paiva*, 939 F.Supp. 1493–94.

27   Here, Plaintiff generally alleges that Captain Primas failed to properly train Officer Williams

28  with respect to using deadly force and Sheriff Gillespie failed to properly investigate the incident.

8

1    However, Plaintiff did not plead facts sufficient to establish that Metro knew that the inadequacy of its

2    training and supervision was likely to result in constitutional violations and took no corrective action.

3    In *Nadell v. Las Vegas Metropolitan Police Department*, 268 F.3d 924, 929 (9th Cir. 2001), Metro was

4    similarly charged with liability for the use of excessive force by its officers.  The Ninth Circuit held that

5    although the officers were personally liable for their actions, Metro could not be held responsible

6    because the plaintiff did not present any evidence that the use of excessive force was "a widespread

7    practice of the LVMPD or that previous constitutional violations had occurred for which the offending

8    officers were not discharged or reprimanded." *Id.* at 930.  Similarly, Plaintiff has failed to plead

9    sufficient facts to establish the existence of Metro policy that would overcome the immunity issue.  The

10   Court will give Plaintiff leave to amend his claim against Metro if he believes that he can present the

11   Court will actual evidence of inadequate training.

### 5.    Punitive Damages

13        The Supreme Court has ruled that a Section 1983 plaintiff may not recover punitive damages

14   against a municipality because a municipality is unable to form the necessary intent required for

15   punitive damages; and because punitive damages against a municipality serves to punish taxpayers.  *See*

16   *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267–68, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616

17   (1981).  Accordingly, the Court will recommend that Plaintiff's claim for punitive damages against

18   Metro be dismissed.  The Court will not rule on the punitive damages claim with respect to the named

19   Metro officer defendants at this time because not enough is known about their degree of culpability.

### D.    State Law Negligent Training and Supervision

21        Plaintiff's complaint also asserts claims of negligence in the training and supervision of Officer

22   Williams with respect to the use of excessive force.  Pursuant to NRS 41.032, "no action may be

23   brought ... which is ... [b]ased upon the exercise or performance or the failure to exercise or perform a

24   discretionary function or duty on the part of the [s]tate or any of its agencies or political subdivisions or

25   of any officer, employee, or immune contractor of any of these, whether or not the discretion involved

26   is abused."  Nevada courts look to federal case law under the Federal Tort Claims Act ("FTCA") for

27   guidance on what type of conduct is protected by discretionary immunity.  *See Martinez v. Maruszczak*,

28   168 P.3d 720, 727 (Nev. 2007).  "[T]o fall within the scope of discretionary-act immunity, a decision

1  must (1) involve an element of individual judgment or choice and (2) be based on considerations of

2  social, economic, or political policy." *Id.* at 446–47.  "[D]ecisions relating to hiring, training, and

3  supervision of employees usually involve policy judgments of the type Congress intended the

4  discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000).

5        However, acts that violate the Constitution are not discretionary.  *Nurse v. United States*, 226

6  F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates

7  a legal mandate.")  Additionally, failure by Metro to adequately train its officers with respect to the use

8  of excessive force has been found to not involve a policy judgment deserving of discretionary immunity

9  in some situations.  *See Scott v. LVMPD, et al.*, 2011 WL 2295178 (D. Nev. June 8, 2011); *but see*

10  *Belch v. LVMPD*, 2011 WL 1070175 (D. Nev. March 21, 2011); *Beckwith v. Pool*, 2013 WL 3049070

11  (D. Nev. June 17, 2013).  For example, in *Davis v. City of Las Vegas*, the Ninth Circuit noted that under

12  *Falline v. GNLV Corp.*, 823 P.2d 888 (1991), where an officer arrests a citizen in an abusive manner

13  not as the result of the exercise of poor judgment as to the force required to make an arrest, but instead

14  because of hostility toward a suspect or a particular class of suspects—such as members of racial

15  minority groups—or because of a willful or deliberate disregard for the rights of a particular citizen or

16  citizens, then the officer's actions are the result of bad faith and he is not immune from suit.  478 F.3d

17  1048, 1060 (9th Cir. 2007).  Accordingly, the Court will grant Plaintiff leave to amend his complaint

18  with respect to this state law claim if he thinks he can present evidence of bad faith.

19  **III.    Appointment of Counsel**

20        Civil litigants do not have a Sixth Amendment right to appointed counsel.  *Storseth v. Spellman*,

21  654 F.2d 1349, 1353 (9th Cir. 1981).  In very limited circumstances, federal courts are empowered to

22  request an attorney to represent an indigent civil litigant.  For example, courts have discretion, pursuant

23  to 28 U.S.C. § 1915(e)(1), to "request" that an attorney represent indigent civil litigants upon a showing

24  of "exceptional circumstances," *see Ageyman v. Corrections Corp. of America*, 390 F.3d 1101, 1103

25  (9th Cir. 2004).  The circumstances in which a court will make such a request, however, are

26  exceedingly rare and require a finding of extraordinary circumstances. *United States v. 30.64 Acres of*

27  *Land*, 795 F.2d 796, 799-800 (9th Cir. 1986); *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir.

28  1986).

1        To determine whether the "exceptional circumstances" necessary for appointment of counsel are

2 present the court evaluates (1) the likelihood of plaintiff's success on the merits and (2) the plaintiff's

3 ability to articulate his claim *pro se* "in light of the complexity of the legal issues involved." *Agyeman*,

4 390 F.3d at 1103 (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).  Neither of

5 these factors is dispositive and both must be viewed together. *Wilborn*, 789 F.2d at 1331.  The court

6 has considerable discretion in making these findings.

7        Upon review, the Court finds that the exceptional circumstances necessary to justify

8 appointment of counsel are not present.  Plaintiff alleges that he lacks the knowledge, skills, and

9 education necessary to research and proceed with this case.  However, Plaintiff has thus far

10 demonstrated his ability to articulate his claims *pro se* and the legal issues are not complex.  So long as

11 a *pro se* litigant is able to "articulate his claims against the relative complexity of the matter," the

12 "exceptional circumstances" that might require the appointment of counsel do not exist. *Wilborn*, 789

13 F.2d at 1331 (finding no abuse of discretion under 28 U.S.C. § 1915(e) when district court denied

14 appointment of counsel despite fact that plaintiff "may well have fared better").  Accordingly, the Court

15 will deny Plaintiff's Motion for Appointment of Counsel.

16        Based on the foregoing and good cause appearing therefore,

17 **<u>ORDER</u>**

18     **IT IS ORDERED** that Plaintiff's Motion/Application to Proceed *In Forma Pauperis* (#1) is

19 **granted**.  Plaintiff shall not be required to pre-pay the full filing fee of four hundred dollars ($400.00).

20 However, even if this action is dismissed, the full filing fee of $400.00 must still be paid pursuant to 28

21 U.S.C. § 1915(b)(2).

22     **IT IS FURTHER ORDERED** that Plaintiff is permitted to maintain this action to its

23 conclusion without the necessity of prepaying any additional fees or costs or giving security therefor.

24 This Order granting leave to proceed *in forma pauperis* shall not extend to the issuance of subpoenas at

25 government expense.

26     **IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(b)(2), the Nevada

27 Department of Corrections shall pay to the Clerk of the United States District Court, District of Nevada,

28 twenty percent of the preceding month's deposits to Plaintiff's account (inmate #87105), in the months

11

1    that the account exceeds $10.00, until the full $400 filing fee has been paid for this action.  The Clerk

2    of the Court shall send a copy of this Order to the Finance Division of the Clerk's Office.  Additionally,

3    the Clerk shall send a copy of this order to the Chief of Inmate Services for the Nevada Department of

4    Prisons, P.O. Box 7011, Carson City, NV 89702

5         **IT IS FURTHER ORDERED** that the Clerk of the Court shall file the Complaint (#1-1).

6         **IT IS FURTHER ORDERED** that the Complaint is **dismissed without prejudice** for failure

7    to state a claim upon which relief can be granted, with leave to amend.  Plaintiff will have **thirty (30)**

8    **days** from the date that this Order is entered to file an Amended Complaint, if he believes he can

9    correct the noted deficiencies and state a claim for relief under Section 1983 and the Fourth

10   Amendment and Nevada State Law.  Failure to comply with this Order may result in the Court

11   recommending that this action be dismissed.

12        **IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (#4) is

13   **denied**.

14                                    **RECOMMENDATION**

15        **IT IS HEREBY RECOMMENDED** that Plaintiff's Eighth Amendment claim against all

16   Defendants, Fourteenth Amendment claim against all Defendants, punitive damages claim against

17   Metro, and claims against the individual defendants named in their official capacity be dismissed with

18   prejudice because Plaintiff failed to state a claim upon which relief can be granted and amendment

19   would be futile.

20                                         **NOTICE**

21        Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

22   writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held

23   that the courts of appeal may determine that an appeal has been waived due to the failure to file

24   objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also

25   held that (1) failure to file objections within the specified time and (2) failure to properly address and

26   brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual

27   issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt*

28   *v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

1    Dated this 8th day of July, 2013.

2

3

4                                              _____
                                               C.W. Hoffman, Jr.
5                                              United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28