1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LARRY BARBER,                                         )
                                                      )        Case No. 2:13-cv-00538-GMN-CWH
                              Plaintiff,              )
                                                      )        **ORDER AND REPORT**
vs.                                                   )        **AND RECOMMENDATION**
                                                      )
STEVE WILLIAMS, *et al.*,                             )
                                                      )
                                                      )
                              Defendants.             )
_____ )

        This matter is before the Court on Plaintiff's Amended Complaint (#10), filed on August 8,
2013.  Plaintiff's previously filed a Motion/Application to Proceed *In Forma Pauperis* (#1) on March
29, 2013.  The Court granted his Application on July 8, 2013 and issued a Recommendation that some
of his claims and named defendants be dismissed.  *See* Order and Report and Recommendation (#6).
On July 29, 2013, Plaintiff filed his First Amended Complaint (#8).  On August 7, 2013, the Court
adopted the Recommendation and dismissed with prejudice some claims and defendants.  *See* Order
(#9).  On August 8, 2013, Plaintiff filed his Second Amended Complaint, which is at issue in this
Recommendation.

                                        **DISCUSSION**

**I.      Screening the Amended Complaint**

        Upon granting a request to proceed *in forma pauperis*, a court must additionally screen the
complaint pursuant to § 1915(a).  Federal courts are given the authority dismiss a case if the action is
legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Allegations
of a *pro se* complaint are held to less stringent standards than formal pleading drafted by lawyers.
*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curium).  When a court dismisses a complaint under §
1915(a), the plaintiff should be given leave to amend the complaint with directions as to curing its

1   deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by
2   amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

3          Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for
4   failure to state a claim upon which relief can be granted.  Review under Rule 12(b)(6) is essentially a
5   ruling on a question of law. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir.
6   2000).  A properly pled complaint must provide a short and plain statement of the claim showing that
7   the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544,
8   555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands "more than labels
9   and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556
10  U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The court must accept as
11  true all well-pled factual allegations contained in the complaint, but the same requirement does not
12  apply to legal conclusions. *Iqbal*, 556 U.S. at 679.  Mere recitals of the elements of a cause of action,
13  supported only by conclusory allegations, do not suffice. *Id.* at 678.  Secondly, where the claims in the
14  complaint have not crossed the line from plausible to conceivable, the complaint should be dismissed.
15  *Twombly,* 550 U.S. at 570.

16         Additionally, the court cannot refer to a prior pleading in order to make an amended complaint
17  complete.  Local Rule 15-1 requires that an amended complaint be complete in itself without reference
18  to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original
19  complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended
20  complaint, the original pleading no longer serves any function in this case.  Therefore, in an amended
21  complaint, each claim and the involvement of the defendant must be sufficiently alleged.  Given that
22  Plaintiff filed his Second Amended Complaint (#10) after the Court's order dismissing some claims and
23  defendants, the Court finds that his First Amended Complaint (#8) is moot.  The Court will address
24  only the Second Amended Complaint (#10) in the subsequent analysis.

25         **A.      Diversity Jurisdiction**

26         Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions
27  in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the
28  matter is between "citizens of different states."  Plaintiff asserts damages of more than $3 million in his

1  complaint.  However, Plaintiff and Defendants appear to be Nevada citizens so there is no diversity

2  jurisdiction in this case.

3        **B.    Federal Question Jurisdiction**

4        As a general matter, federal courts are courts of limited jurisdiction and possess only that power

5  authorized by the Constitution and statute.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Pursuant to 28

6  U.S.C. § 1331, federal district courts have original jurisdiction over "all civil actions arising under the

7  Constitution, laws, or treaties of the United States."  "A case 'arises under' federal law either where

8  federal law creates the cause of action or 'where the vindication of a right under state law necessarily

9  turn[s] on some construction of federal law.'"  *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086,

10 1088-89 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S.

11 1, 8-9 (1983)).  The presence or absence of federal-question jurisdiction is governed by the "well-

12 pleaded complaint rule."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under the well-

13 pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face

14 of the plaintiff's properly pleaded complaint."  *Id.*  For the reasons state below, the Court finds that

15 Plaintiff has alleged facts sufficient to state a Fourth Amendment claim for relief under Section 1983.

16       **C.    42 U.S.C. § 1983 Claim**

17       Upon review of the Amended Complaint, it appears as though Plaintiff is alleging excessive use

18 of force in violation of the Fourth Amendment against Officer Steve Williams.  On January 1, 2012,

19 Plaintiff asserts that he was attempting to flee when Officer Williams used excessive force in firing his

20 gun six times to stop Plaintiff, which resulted in Plaintiff being struck four times and injured.  To state a

21 claim under Section 1983, a plaintiff must allege that a right secured by the Constitution has been

22 violated and the deprivation was committed by a person acting under color of state law.  *See, e.g.,*

23 *Gibson v. U.S.*, 781 F.2d 1334, 1338 (9th Cir.1986); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Long v.*

24 *County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006).  States and state officers sued in their

25 official capacity are not "persons" for the purposes of a section 1983 action, and generally, they may not

26 be sued under the statute.  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  However,

27 Section 1983 does allow suits against state officers in their individual capacities.  *Hafer v. Melo*, 502

28 U.S. 21, 26 (1991).  Liability can attach to an officer in his individual capacity if the plaintiff is able to

3

1    establish: (1) that the official caused the deprivation of the plaintiff's rights while acting personally

2    under color of state law, and (2) that the official is not entitled to the protection of qualified immunity.

3    *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)

4                  **1.    Fourth Amendment**

5          The Fourth Amendment guarantees a citizen's right to be free from "unreasonable searches and

6    seizures." *U.S. Const. Amend. IV.*   Apprehension by the use of deadly force is without question a

7    seizure within the meaning of the Fourth Amendment, *see Tennessee v. Garner*, 471 U.S. 1, 7 (1985),

8    and is permitted only where "at a minimum, the suspect presents an immediate threat to the officer or

9    others, or is fleeing and his escape will result in a serious threat of injury to persons." *Harris v.*

10   *Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997).  Moreover, there must be objective factors to justify the

11   officer's concern that the suspect poses a threat—a simple statement by the officer is insufficient.

12   Therefore, in determining whether Plaintiff's Fourth Amendment rights were violated, the Court must

13   consider whether the Defendant officer had probable cause to believe that Plaintiff posed a significant

14   threat of death or serious physical injury to himself or others, and used reasonable force to alleviate that

15   threat. *Tennessee*, 471 U.S. at 3; *Graham v. Connor*, 490 U.S. 386 (1989).  Plaintiff claims he followed

16   Officer Williams' commands to remove any weapons and step outside the Travel Inn.  After doing so,

17   Plaintiff contends that Officer Williams pushed him backward and fired his gun several times, hitting

18   Plaintiff.  Taking these allegations as true, the Court finds that Plaintiff has stated sufficient facts to

19   state a claim for relief under Section 1983 against Officer Williams.

20                 **2.    Qualified Immunity**

21         When government officials abuse their offices, actions for damages under Section 1983 may

22   offer injured parties the only avenue for vindicating violations of their constitutional rights.  *See*

23   *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  However, permitting damages suits against government

24   employees "'can entail substantial social costs, including the risk that fear of personal monetary liability

25   and harassing litigation will unduly inhibit officials in the discharge of their duties.'"  *Lombardi v. City*

26   *of El Cajon*, 117 F.3d 1117, 1125 n. 5 (9th Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635,

27   638 (1987)).  Courts have responded to these competing interests by providing qualified immunity to

28   government officials who act reasonably in performing discretionary functions.  *Id.*  Qualified immunity

1 entitles government officials to "an immunity from suit rather than a mere defense to liability."

2 *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether qualified immunity applies is a legal question

3 to be decided early in litigation. *See Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998).

4          In the past, Ninth Circuit courts focused their initial inquiry in qualified immunity cases on

5 whether a constitutional right was clearly established. *Jackson v. City of Bremerton*, 268 F.3d 646, 651

6 (9th Cir. 2001). However, in *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court clarified that in

7 evaluating whether qualified immunity applies, the threshold question is: "Taken in the light most

8 favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

9 constitutional right?" 121 S.Ct. at 2156.  If the district court finds that no constitutional right would be

10 violated were the allegations true, qualified immunity applies and there is no need to conduct further

11 inquiries. *Id.* Only if the court determines that a constitutional violation could be made out is it

12 necessary to proceed to the second inquiry: whether the constitutional right was clearly established. *Id.*

13 The Supreme Court's requirement that courts focus first on constitutional violations is "intended to

14 assist courts in disposing of insubstantial suits at an early stage of litigation." *Jackson*, 268 F.3d at 651.

15          Here, a reasonable officer would be aware that the use of extreme and deadly force is only

16 reasonable and permissible when the officer perceives a threat of danger to himself or others.  As a

17 result, a Fourth Amendment claim against Officer Williams in his individual capacity may be subject to

18 qualified immunity.  Nevertheless, the Court will defer ruling on the immunity issue at this time as

19 Plaintiff has stated enough facts, when taken as true, to state a Fourth Amendment violation.

20                    **3.    Municipal Liability**

21          It is not clear from Plaintiff's Amended Complaint (#10) whether he is alleging a Section 1983

22 claim against the Las Vegas Metropolitan Police Department ("LVMPD").  However, given that

23 allegations of a *pro se* complaint are held to less stringent standards than formal pleading drafted by

24 lawyers, the Court will consider such a claim.  In *Monell v. Department of Social Services*, 436 U.S.

25 658 (1978), the Supreme Court held that a municipality could be held liable under Section 1983 if an

26 official policy or custom directly caused the violation of an individual's constitutional rights.  However,

27 a municipality cannot be held liable simply because it employs an officer who commits a constitutional

28 tort.  *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir.1995) (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct.

1   2018).  Such discretionary actions of municipal employees, even when unconstitutional, generally are

2   not chargeable to the municipality under Section 1983.  *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th

3   Cir. 1992).

4          To impose 1983 liability on a local governmental entity, such as LVMPD in this case, a plaintiff

5   must establish "(1) that he possessed a constitutional right of which he was deprived; (2) that the

6   municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's

7   constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"

8   *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378,

9   389–91 (1989)).  A plaintiff cannot prove the existence of a municipal policy or custom based only on

10  the occurrence of a single constitutional violation by a law enforcement officer.  *Davis v. City of

11  Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).  However, a policy "may be inferred from widespread

12  practices or 'evidence of repeated constitutional violations for which the errant municipal officers were

13  not discharged or reprimanded.'"  *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir.

14  2001) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)).

15         A plaintiff need not show that a municipality affirmatively encouraged officers to take the lives

16  of citizens; rather a municipality may be liable under Section 1983 for constitutional injuries inflicted

17  by its officers if it fails to adequately guard against such injuries through training and supervision.  *See

18  City of Canton*, 489 U.S. at 388.  The need for more or different training may be so obvious, and the

19  inadequacy so likely to result in violations of constitutional rights, that the municipality may be said to

20  have displayed "deliberate indifference."  *Id.* at 390.  A municipality will be held to a "constructive

21  notice" standard for failing to take corrective measures where information about officer misconduct

22  plainly indicates a need for such measures.  *See Paiva*, 939 F.Supp. 1493–94.

23         Here, Plaintiff plead no facts to establish that the LVMPD knew that the inadequacy of its

24  training and supervision was likely to result in constitutional violations and took no corrective action.

25  In *Nadell v. Las Vegas Metropolitan Police Department*, 268 F.3d 924, 929 (9th Cir. 2001), the

26  LVMPD was charged with liability for the use of excessive force by its officers.  The Ninth Circuit held

27  that although the officers were personally liable for their actions, Metro could not be held responsible

28  because the plaintiff did not present any evidence that the use of excessive force was "a widespread

1   practice of the LVMPD or that previous constitutional violations had occurred for which the offending

2   officers were not discharged or reprimanded." *Id.* at 930.  Here, Plaintiff has failed to plead sufficient

3   facts to establish the existence of LVMPD policy that would overcome the immunity issue.  The Court

4   previously gave Plaintiff leave to amend this claim.  Although Plaintiff names LVMPD as a defendant

5   in the Amended Complaint (#10), he fails to provide any facts regarding a 1983 claim against LVMPD

6   much less a practice or policy regarding excessive force.  Accordingly, the Court will recommend

7   dismissing the 1983 claim against the LVMPD.

8        **D.    State Law Negligent Training and Supervision**

9        Plaintiff's complaint also generally asserts a claim of negligence in the training and supervision

10  of Officer Williams with respect to the use of excessive force by LVMPD.  Pursuant to NRS 41.032,

11  "no action may be brought ... which is ... [b]ased upon the exercise or performance or the failure to

12  exercise or perform a discretionary function or duty on the part of the [s]tate or any of its agencies or

13  political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not

14  the discretion involved is abused."  Nevada courts look to federal case law under the Federal Tort

15  Claims Act ("FTCA") for guidance on what type of conduct is protected by discretionary immunity.

16  *See Martinez v. Maruszczak*, 168 P.3d 720, 727 (Nev. 2007).  "[T]o fall within the scope of

17  discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice

18  and (2) be based on considerations of social, economic, or political policy."  *Id.* at 446–47.

19  "[D]ecisions relating to hiring, training, and supervision of employees usually involve policy judgments

20  of the type Congress intended the discretionary function exception to shield."  *Vickers v. United States*,

21  228 F.3d 944, 950 (9th Cir. 2000).

22       However, acts that violate the Constitution are not discretionary.  *Nurse v. United States*, 226

23  F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates

24  a legal mandate.")  Additionally, failure by the LVMPD to adequately train its officers with respect to

25  the use of excessive force has been found to not involve a policy judgment deserving of discretionary

26  immunity in some situations.  *See Scott v. LVMPD, et al.*, 2011 WL 2295178 (D. Nev. June 8, 2011);

27  *but see Belch v. LVMPD*, 2011 WL 1070175 (D. Nev. March 21, 2011); *Beckwith v. Pool*, 2013 WL

28  3049070 (D. Nev. June 17, 2013).  For example, in *Davis v. City of Las Vegas*, the Ninth Circuit noted

1  that under *Falline v. GNLV Corp.*, 823 P.2d 888 (1991), where an officer arrests a citizen in an abusive

2  manner not as the result of the exercise of poor judgment as to the force required to make an arrest, but

3  instead because of hostility toward a suspect or a particular class of suspects—such as members of

4  racial minority groups—or because of a willful or deliberate disregard for the rights of a particular

5  citizen or citizens, then the officer's actions are the result of bad faith and he is not immune from suit.

6  478 F.3d 1048, 1060 (9th Cir. 2007).  The Court previously gave Plaintiff leave to amend his complaint

7  with respect to this state law claim to present evidence of bad faith.  Plaintiff has failed to provide any

8  facts to support this claim and has failed to even articulate this cause of action in the Amended

9  Complaint (#10).  Consequently, the Court will recommend dismissal of the negligence in the training

10 and supervision claim against LVMPD.

### **ORDER**

11

12  **IT IS HEREBY ORDERED** that Plaintiff's First Amended Complaint (#8) is denied as moot.

13  **IT IS FURTHER ORDERED** that the Clerk of the Court shall issue Summons to Defendant

14 Officer Williams and deliver the same to the U.S. Marshal for service of Amended Complaint (#10).

15 Plaintiff shall have twenty days in which to furnish the U.S. Marshal with the required Form USM-285.

16 Within twenty days after receiving from the U.S. Marshal a copy of the Form USM-285, showing

17 whether service has been accomplished, Plaintiff must file a notice with the Court identifying whether

18 Defendant was served.  If Plaintiff wishes to have service again attempted on an unserved Defendant, a

19 motion must be filed with the Court identifying the unserved Defendant and specifying a more detailed

20 name and/or address for said Defendant, or whether some other manner of service should be attempted.

21 Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within

22 120 days from the date this order is entered.

23  **IT IS FURTHER ORDERED** that, from this point forward, Plaintiff shall serve upon

24 Defendant or, if appearance has been entered by counsel, upon the attorney(s), a copy of every pleading

25 motion or other document submitted for consideration by the court.  Plaintiff shall include, with the

26 original papers submitted for filing, a certificate stating that a true and correct copy of the document

27 was mailed to Defendant or counsel for Defendant.  The Court may disregard any paper received by a

28 District Judge or Magistrate Judge that has not been filed with the Clerk, and any paper received by a

8

1  District Judge, Magistrate Judge, or the Clerk that fails to include a certificate of service.

2  **RECOMMENDATION**

3  **IT IS HEREBY RECOMMENDED** that Plaintiff's 1983 claim and state law claim for

4  negligent training and supervision against the LVMPD be **dismissed with prejudice** because Plaintiff

5  failed to state a claim upon which relief can be granted.

6  **NOTICE**

7  Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

8  writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held

9  that the courts of appeal may determine that an appeal has been waived due to the failure to file

10 objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also

11 held that (1) failure to file objections within the specified time and (2) failure to properly address and

12 brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual

13 issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt*

14 *v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

15 Dated this 10th day of September, 2013.

16

17

18 _____

19 **C.W. Hoffman, Jr.**
   **United States Magistrate Judge**

20

21

22

23

24

25

26

27

28

9